**UNITED STATES of America,**
**Petitioner,**

v.

**Gilbert GREEN, Respondent.**

United States District Court
S. D. New York.
April 16, 1956.

Paul W. Williams, U. S. Atty., for the S. D. of New York, New York City, for petitioner. Thomas A. Bolan, Asst. U. S. Atty., New York City, of counsel.

John J. Abt, New York City, for respondent.

DAWSON, District Judge.

This proceeding was brought on by an order to show cause duly served upon the respondent directing him to show cause why he should not be adjudged and held. in criminal contempt of this Court by reason of the fact that he knowingly and deliberately disobeyed and resisted a lawful order and command of this Court directing him to appear before it on July 2, 1951 and July 3, 1951 for surrender in execution of the judgment and sentence imposed under indictment C. 128–87.

Respondent was convicted in this Court, after a long trial before Judge Medina, of conspiring to teach and advocate the overthrow of the government by force and violence, 18 U.S.C.A. § 2385,. and pending appeal from his conviction,. was ordered released on bail. The conviction was sustained by the Court of Appeals, 2 Cir., 183 F.2d 201, and on June 4, 1951, the Supreme Court affirmed his conviction. Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. A proposed order on mandate requiring his appearance for surrender to the United States Marshal on July 2, 1951 was served upon his counsel on June 28, 1951. Respondent did not appear on July 2, 1951, and attempts thereafter to execute a bench warrant at his stated address failed.

Respondent was arraigned and pleaded not guilty to the charge of contempt, and the issues were tried by the Court without a jury pursuant to Federal Rules of Criminal Procedure, Rule 42, 18 U.S.C. A.

The evidence showed that the order of Judge Ryan of July 2, 1951 required the respondent to surrender personally to the United States Marshal for the Southern District of New York. There is no doubt that respondent did not surrender for over four years, or not until February 27, 1956 when he surrendered himself for commitment at the United States Courthouse in New York, N. Y.

■ The evidence was sufficient to establish, beyond a reasonable doubt, that the respondent knowingly disobeyed the order of Judge Ryan. The evidence showed that Mr. Sacher, an attorney in the case, personally advised the respondent on June 29th that he had to be in Court on July 2, 1951. There was other evidence that thereafter, but before July 2, respondent left his New York City address and was not seen there again. There was further evidence that several days before respondent surrendered, he issued a written statement to the press admittedly signed by him which conclusively established that he had remained in hiding in order to avoid serving the sentence to which he had been committed. Furthermore, on the day on which he surrendered, respondent made statements to the reporters who were present on the Courthouse steps which also conclusively established that he had knowingly and willfully absented himself so as to avoid serving a sentence which he knew had been imposed upon him.

From the testimony, the Court found as a fact that respondent had notice of the order and willfully disobeyed it. See United States v. Hall, 2 Cir., 1952, 198 F.2d 726, certiorari denied 1953, 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341.

Respondent then contended that the Court was without power to impose a sentence for contempt of Court of more than one year, and this opinion deals primarily with that question.

§ 401 of 18 U.S.C.A. provides that

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

"(3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

■ It is the argument of the respondent that this provision is not a grant of unlimited power to the Court, but that the discretion of the Court is confined to punishment for a misdemeanor, as defined in § 1 of Tit. 18 U.S.C.A., i. e., a crime punishable by imprisonment for not more than one year. Respondent argues that at Common Law, contempt was considered to be a misdemeanor; and that if § 401 is construed to authorize the punishment of contempt by a term of more than one year, it would violate that provision of the Fifth Amendment to the United States Constitution which provides that:

"No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

This argument presupposes that criminal contempt is an "infamous crime" within the meaning of those words as used in the Fifth Amendment.

■ While, for certain purposes, contempt cases may be considered criminal cases, it has been well established that "proceedings in contempt may be said to be sui generis". O'Neal v. United States, 1903, 190 U.S. 36, 23 S.Ct. 776, 777, 47 L.Ed. 945.[1] The Court of Appeals for the Eighth Circuit in a case which raised the point now urged by the respondent decided that a criminal contempt is an "offense" and that the sentence imposed might exceed a year in the penitentiary. Creekmore v. United States, 8 Cir., 1916, 237 F. 743.

1. See to same effect Bowdon v. Bowdon, Tenn.1955, 278 S.W.2d 670.

The argument that the English courts at the time of the adoption of the original Judiciary Act of 1789 considered criminal contempts as misdemeanors is not persuasive. In those days, many crimes which were considered misdemeanors were punished by sentences much more severe than one year in the penitentiary. In fact, in those days, the fact that a crime was a felony implied in law that it was punishable by capital punishment even if the statute prescribed no penalty. Blackstone, Commentaries on the Laws of England (1765–9) Vol. IV, p. 98. Consequently, characterization of an offense as a misdemeanor meant merely that it was not punishable by capital punishment and not, as respondent contends, that it was punishable by imprisonment of no more than one year. Blackstone, with reference to the punishment for contempt, states as follows: .

> "If he confesses the contempt, the court will proceed to correct him by fine or imprisonment, or both, and sometimes by a corporal or *infamous* punishment." Vol. IV, p. 287 (emphasis added).

■ The respondent argues that by virtue of the Common Law, a criminal contempt is a misdemeanor and hence is not punishable by a sentence of more than one year under 18 U.S.C.A. § 1. This argument involves a misapprehension of § 1. This section does not state that if a crime is a misdemeanor it may not be punished by a sentence of in excess of one year. Rather, the section provides the reverse, that if the allowable punishment is one year or less, the crime is a misdemeanor. Thus, it is the penalty which governs the classification and not any characterization or classification given by the Common Law or by a statute which governs the penalty. Ex parte Brede, D.C.E.D.N.Y.1922, 279 F. 147, 149, affirmed 1923, 263 U.S. 4, 44 S. Ct. 8, 68 L.Ed. 132.

The point urged by respondent depends not so much upon the penalty which might be imposed but rather upon the question as to whether contempt was at the time of the framing of the Constitution considered as that type of "infamous crime" which at Common Law was triable by a jury.

While it has been said by distinguished authors that up to 1720, cases of contempt in England, when committed not in the presence of the Court or by persons officially connected with the Court, were tried by a jury, there is no indication that this procedure was followed after 1720.[2]

Blackstone, whose Commentaries probably did much to influence the thinking of American lawyers at and before the time of the framing of the Federal Constitution, pointed out that:

> "A power, therefore, in the supreme courts of justice, to suppress such contempts by an immediate attachment of the offender results from the first principles of judicial establishments, and must be an inseparable attendant upon every superior tribunal." (Vol. IV, p. 286)

That contempts, insofar as punishment is concerned, were sui generis and were not "infamous crimes" within the meaning of the Fifth Amendment has been recognized over the past century and a half. As early as 1812, the Supreme Court of the United States pointed out that the United States Courts had no Common Law jurisdiction in criminal cases, and that their jurisdiction must, in each case, depend upon a statute, except that the power to fine or imprison for contempt is a power which necessarily resides in the courts of justice from the nature of their institution and does not depend upon statute. The United States v. Hudson, 1812, 7 Cranch 32, 3 L. Ed. 259. In 1811, the Court for the Trial of Impeachments and the Correction of Errors of the State of New York held:

2. "Power of Congress over Procedure in Criminal Contempts", Frankfurter and Landis, 37 Harv.L.Rev. 1010 at 1042 (1924).

"A contempt is an offense against the court, as an organ of public justice; and the court can rightfully punish it on summary conviction, whether the same be punishable as a crime or misdemeanor, on indictment, or not." Yates v. Lansing, 1811, 9 Johns. 395, 417.

Cooley in Constitutional Limitations (8th Ed.1927), p. 668, Note 2, states:

"The power to punish contempts summarily is incident to courts of record, and the courts have generally held that cases of contempt are not triable by jury. The objects of the power would be defeated in many cases if they were."

■■ The power to punish for contempt is not controlled by the Constitution as to modes of accusation and methods of trial. In re Michael, 3 Cir., 1944, 146 F.2d 627, reversed on other grounds 1945, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30. A Court in enforcing obedience to its orders by proceedings for contempt "is not executing the criminal laws of the land" nor in such a proceeding is there "any invasion of the constitutional right of trial by jury". In re Debs, 1895, 158 U.S. 564, 594, 596, 15 S.Ct. 900, 911, 39 L.Ed. 1092; see United States v. United Mine Workers, 1947, 330 U.S. 258, at page 298, 67 S.Ct. 677, 91 L.Ed. 884.

Whether the right of trial by jury for criminal contempt should be granted by appropriate amendment to the statute or rule is a matter which appropriately may be argued. "Contempt of Court, Criminal and Civil", Joseph H. Beale, Jr., 21 Harv.L.Rev. 161 (1908); "Civil and Criminal Contempt in the Federal Courts", 57 Yale L. Journal 83 (1947).

■ However, no such argument was made by the respondent. He limited his argument solely to the extent of the sentence. Such sentence, it has been established, rests solely in the sound discretion of the Court, subject only to the Constitutional provision against cruel and unusual punishment. United States ex rel. Brown v. Lederer, 7 Cir., 1944, 140 F.2d 136. Thus, in Hill v. United States ex rel. Weiner, 1937, 300 U.S. 105, 57 S.Ct. 347, 81 L.Ed. 537, a two-year sentence was affirmed; in Conley v. United States, 8 Cir., 1932, 59 F.2d 929, a two-year sentence was affirmed; in United States v. Hall, 2 Cir., 1952, 198 F.2d 726, certiorari denied 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341, a three-year sentence was affirmed; in United States v. Thompson, 2 Cir., 1954, 214 F.2d 545, a four-year sentence was affirmed.

■ In the exercise of the discretion residing in the Court, the respondent has been sentenced to three years in the penitentiary following the completion of the five-year sentence which was originally imposed upon him.