**UNITED STATES of America,
Plaintiff,**

v.

**Leon I. ROSS, Ross and Company, Limited, and Central Trading, Inc.,
Defendants.**

United States District Court
S. D. New York.

April 28, 1965.

See also D.C., 37 F.R.D. 566, 196 F. Supp. 243.

Robt. M. Morgenthau, U. S. Atty., Thomas H. Baer, Asst. U. S. Atty., of counsel, for defendant Leon I. Ross.

Farber, Cohen & Diamond, New York City, Frank R. Cohen, New York City, of counsel, for defendant Leon I. Ross.

LEVET, District Judge.

The United States of America, plaintiff herein, has moved for an order—

(1) adjudging the defendant Leon I. Ross in contempt of orders of this court filed July 28 and August 7, 1961, as modified and affirmed, requiring him to transfer certain properties therein specified to a receiver;

(2) adjudging and fixing damages in the total amount of the expenses of administering the receivership to date as the amount of damages to which the United States of America is entitled as a result of said contempt;

(3) fixing a fine;

(4) ordering Ross to comply with said orders to purge his contempt; and

(5) directing the arrest of Ross by the United States Marshal and his confinement until his compliance with the said orders and payment of damages and a fine, if any, or until otherwise discharged under law pursuant to Rule 14 of the Civil Rules of the United States District Court for the Southern District of New York.

The action is brought to collect taxes in the amount of $2,224,675.85 plus interest due and owing from Ross to plaintiff.

### ORDER OF JULY 28, 1961

On or about July 28, 1961, Judge Dimock of this court made an order requiring that defendant Leon I. Ross, his agents, servants, employees, etc. be restrained from selling, transferring, etc. any and all property of the said defendant wheresoever situated pending the hearing and determination of this action; appointing George Zeidenstein, Esq., receiver (later superseded by William H. Mulligan as receiver) of the property of said Ross with all the powers of a receiver in equity, and further directing the said Ross to assign and transfer and deliver to said receiver any and all shares of stock in Ross and Company, Limited, a corporation of the Bahamas, and in Central Trading, Inc., a corporation of Liberia, standing in the name of said Ross or in his possession or ownership wherever the same may be located.

This order was modified on or about August 7, 1961 by an order of Judge Herlands of this court which provided that the above-mentioned order directing delivery of the said shares would be "deemed satisfied by having said stock deposited with reasonable dispatch (but not later than 12 noon, August 12, 1961) with the clerk of this court who will hold said stock pending the hearing and determination of this application [for reargument] and subject to the further order of the court." The motion for reargument was denied on August 21, 1961.

On or about August 19, 1961, the said order of July 28, 1961 was amended by the addition of the following:

"IT IS ORDERED, that defendant Leon I. Ross, in his capacity as a shareholder, director and/or officer of Ross and Company, Limited, a corporation of the Bahamas, and Central Trading, Inc., a corporation of Liberia, and any and all agents, servants, employees, officers, attorneys and all persons in active concert and participation with him in his capacity as a shareholder, director or officer of said corporations, be and they hereby are restrained from selling, transferring, pledging, encumbering or in any way removing from their present locations, any and all property of said corporations wheresoever situate, pending the

hearing and determination of this action."

## MODIFICATION BY THE COURT OF APPEALS

On May 3, 1962, 302 F.2d 831, the court of appeals affirmed the orders appealed from but modified the same by the addition of the following language:

"Before turning over to the receiver the stock certificates of the two corporations, defendant Ross shall apply for such official consent to such transfer as may be required.

"Before taking possession of any of the books and papers of said corporations the receiver shall apply to the District Court, on notice to the appellant, for leave to do so."

The government asserts that the defendant Ross has never complied with the said orders or the mandate of the Court of Appeals.

## FAILURE TO TRANSFER PROPERTY WITHIN THE UNITED STATES TO THE RECEIVER

The order of Judge Dimock dated July 28, 1961, as above stated, provided that Ross should turn over all property within the United States to the receiver. This, the government asserts, Ross has failed to do and has thereby required the receiver to retain counsel to pursue such property.

On or about July 23, 1964, after a petition by the said receiver, Judge Charles H. Tenney of this court granted the receiver permission to pay his attorneys the interim fee of $3,500 plus disbursements of $377.17 and indicated in his opinion that fees for further services to be rendered by the receiver's attorney in further pursuit of the property of Ross which Ross had refused to voluntarily transfer might ultimately be in order.

## DEFENDANT'S AFFIDAVITS, etc.

In an affidavit submitted by the attorneys for Ross, to wit, Clearly, Gottlieb, Steen & Hamilton, upon the hearing of this motion, Ross asserts the following reasons for inability to comply with the court's orders:

(a) The stock of Central Trading, Inc. was never owned by him and prior to the institution of this action had been owned by Ross and Company, Limited and that, therefore, the orders did not require transfer of this stock by Ross and Company, Limited.

(b) That on or about July 22, 1961 and prior to Judge Dimock's order of July 28, 1961, Ross transferred all of his shares of Ross & Company, Limited which he then owned to Messrs. Ciglen, Phillips, Cravit and Gilbert, attorneys, with offices at 121 Richmond Street W., Toronto 1, Canada, and that such transfer was made to such persons as attorneys for Transamerican Holdings, Ltd., a corporation with which Ross and Company, Limited had been doing business and to effect a pledge of the stock in order to secure an obligation of Ross and Company, Limited to deliver certain bonds to Transamerican Holdings, Ltd.; that this pledge had not been released.

To substantiate this statement, at a subsequent hearing held before this court on March 5, 1965, the attorneys for Ross, now Farber, Cohen & Diamond (Frank R. Cohen, Esq., of counsel), submitted and marked into evidence Exhibit E.

(c) That since on or about December 31, 1962, Ross' stock in Ross & Company, Limited had been a minority interest consisting of 4% of the stock of that company; that on or about that date Ross and Company, Limited issued to Ross' wife, Helen, a citizen of Canada but a resident of the Bahamas, 24 shares of stock having a par value of £1 per share in return for £24,000, the stock being issued because the corporation was in dire need of funds for the operation of its business; that the said stock so issued was worth no more than its par value; that the purchase price for the said stock was supplied by Ross' wife from her own funds obtained from the sale of other securities in her own name and owned by her prior to her marriage to Ross. Subsequently, and at a hearing held by this court on March 5, 1965, the attorney for Ross, Frank R. Cohen, produced what appeared to be copies of the

meeting of shareholders of Ross & Company, Limited, held at the registered offices of the company in the City of Nassau on December 12, 1962, at which time a resolution purportedly was passed increasing the capital of the company by the creation of a further 24,000 shares of the par value of £1 each. (Ex. CC–1) Another extraordinary general meeting of the shareholders was held in the same place on December 31, 1962 at which the said resolution was confirmed. (Ex. CC –2) In a letter from Frank R. Cohen of Farber, Cohen & Diamond, attorneys for Ross, Mr. Cohen offered a letter from the Exchange Control in the Bahamas, dated December 31, 1962, *permitting* the issuance to Mrs. Helen Ross of 24 shares of stock for the sum of £24,000. (See Ex. C) There is evidence that Mrs. Ross paid for this stock by selling certain Canadian securities of Mrs. Ross held by Crown Trust Company in Toronto, Canada. (Exs. DD, F)

(d) Ross further states that the Articles of Association of Ross and Company, Limited provided that no shares of that corporation may be transferred without the prior approval of the Board of Directors and if any transfer is made title of such shares shall remain in the hands of the transferor until such approval is given; that the Board of Directors has indicated that no approval will be given to any transfer which is ordered by a foreign government.

Ross further states that he has no property in the United States except the so-called Fisher's Island real property which is already in the hands of the receiver and that the receiver did not demand that any action on his part be taken at any time after "the entry of the opinion of the Court of Appeals modifying the orders of the District Court."

Any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or which is calculated to lessen its authority or dignity is a contempt. See United States v. Pearson, 62 F.Supp. 767, 769 (N.D. Cal.1945).

A "civil contempt" is a litigant's failure to do something ordered done by the court in a civil action for the benefit of the opposing party therein. But a contempt is civil also when punishment is wholly remedial, serves only the purposes of the complainant, and is not intended generally as a deterrent to offenses against the public. See Walling v. Crane, 158 F.2d 80, 83 (5th Cir. 1946).

Civil contempt is a sanction to enforce compliance with an order of the court. Sauber v. Whetstone, 199 F.2d 520, 523 (7th Cir. 1952); McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

In civil contempt proceedings the question is not one of intent but whether the alleged contemnors have complied with the court's order. See National Labor Relations Board v. Lawley, 182 F.2d 798 (5th Cir. 1950). The contempt charged here appears to be civil. See McCrone v. United States, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108 (1939); Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941).

In the present case, although it is unnecessary, as above stated, to prove intent, it is obviously necessary for the United States in this proceeding to prove that the alleged contemnor, Leon I. Ross, violated the orders. This the United States has failed to do. The papers presented by the United States do not show a violation of the orders concerned. The papers submitted on behalf of Ross indicate no violation of the orders. No request has been made for any further hearing.

Accordingly, the motion to hold Ross for contempt and further other allied relief is denied.

Settle order on notice.